**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SCOTT JOHANSEN and HYTEL GROUP, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 14 C 4994 |
| v. | ) | |
| | ) | Judge Joan H. Lefkow |
| OFFICER HAYDYSCH, | ) | |
| OFFICER NEBLOCK, | ) | |
| SERGEANT FERGUSON, VILLAGE OF | ) | |
| HAMPSHIRE, WILLIAM BURNIDGE, | ) | |
| C & L FARMS, and CINCINNATI INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

An acrimonious severance of a landlord-tenant relationship gave rise to this civil rights

suit against police officers of the Village of Hampshire ("the Village") and others alleged to have

conspired with them to violate plaintiffs' civil rights.  On July 1, 2014, Scott Johansen and Hytel

Group, Inc. ("Hytel"), the tenants, filed suit against the Village, police officers Haydysch and

Neblock, police sergeant Ferguson, the landlord C & L Farms, its principal William Burnidge,

and C & L Farms' insurance carrier, Cincinnati Insurance Company ("Cincinnati"), alleging

violations of their due process rights protected by the Fourth, Fifth, and Fourteenth Amendments

and 42 U.S.C. § 1983 as well as various state-law claims.  (Dkts. 1, 46.)  Before the court are

three motions to dismiss:  Cincinnati's motion to dismiss the conspiracy claim (dkt. 24); William

Burnidge's and C & L Farms' motion to dismiss the conspiracy claim and first due process claim

1

(dkt. 28); and the Village defendants' motion to dismiss plaintiffs' second due process claim

(dkt. 51). For the reasons stated below, defendants' motions are granted.[1]

**BACKGROUND**[2]

## I.    Dispute with C & L Farms

In 1993, Hytel signed a lease for a property located at 290 Industrial Drive in Hampshire,

Illinois. (Dkt. 46 ("Am. Compl.") ¶ 13.) Ownership of the leased premises was later transferred

to C & L Farms, making C & L Farms Hytel's landlord. (*Id.* ¶ 14.) Hytel operated successfully

until 2011, when it could no longer afford to pay its monthly rent. (*Id.* ¶ 17.) Hytel initiated a

move to Elgin, Illinois before its lease with C & L Farms expired. (*See id.*) Relevant to this

case, the lease had a specific article addressing trade fixtures:

> Any trade fixtures belonging to and installed by the Tenant in the
> Leased Premises prior to or during the term of this Lease are to be
> and remain the property of the Tenant no matter how they may be
> attached to or incorporated in the Leased Premises, and Tenant
> shall have the duty to remove same at the termination of this Lease
> and to repair, at its own expense, any damage to the Leased
> Premises caused by the installation or removal of such fixtures.

(*Id.* ¶ 15.)

On February 8, 2011, C & L filed a forcible entry and detainer suit against Hytel. (*Id.*

¶ 18.) In July, C & L Farms and Hytel executed a settlement agreement under which Hytel

would pay C & L Farms $100,000 in exchange for C & L Farms' termination of the lease. (*Id.*

¶ 19.) Under the settlement agreement, Hytel had to vacate the leased premises by July 22,

2011. (*Id.* ¶ 22.) Johansen, however, was unable to meet that deadline and, despite their strained

---

[1] The court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367(a). Venue is proper under 28 U.S.C. § 1391(b) because all events giving rise to this claim occurred in this district.

[2] Unless otherwise noted, the following facts are taken from plaintiffs' amended complaint and are presumed true for the purpose of resolving the pending motion. *Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011).

relationship, persuaded Burnidge to give him more time.  (*Id.* ¶ 23.)  Burnidge agreed to allow Hytel to occupy the building until the move was complete.  (*Id.*)

On September 27, 2011, C & L Farms changed the locks to the leased premises without notifying Hytel.  (*Id.* ¶ 24.)  Burnidge contacted the Kane County Sheriff's Office, which sent a deputy to post an eviction notice on the premises.  (*Id.*)  Burnidge and the deputy inspected the premises and noted that most of the electrical fixtures were disconnected or had been removed.  (*Id.*)  Hytel began to vacate the premises soon after.  (*Id.*)  It continued to remove the electrical fixtures, as it had before the eviction notice.  (*See id.*)  Each time Hytel removed the fixtures, it had to ask Burnidge to unlock the premises to give it access.  Burnidge always agreed, often staying at the building site and watching the removal.  (*Id.*)  On several occasions, the deputy sheriff who had posted the eviction notice was present as well.  (*Id.*)

In October 2011, Burnidge contacted Cincinnati and claimed that Johansen had stolen the trade fixtures.  (*Id.* ¶ 26.)  A Cincinnati representative visited the premises and agreed that "theft or at least vandalism" had taken place.  (*Id.*)  Cincinnati processed Burnidge's claim on behalf of C & L Farms, paying C & L Farms more than $44,000 in compensation.  (*See id.* ¶¶ 26, 29.)

## II.     Dispute with Hampshire Police Department

Around this same time (and apparently unrelated to the conflict between Burnidge and Johansen), Johansen reported a theft to the Hampshire Police Department ("the Police Department").  He claimed a former employee had forged documents in order to take a "substantial amount of money" from the company.  (*Id.* ¶ 30.)  Johansen was not satisfied with the Police Department's response and at one point called the Police Department "demanding answers."  (*Id.* ¶ 31.)  Sergeant Ferguson ordered a copy of the tape of this conversation to give to the Hampshire Chief of Police.  (*Id.* ¶ 32.)  Ferguson later sent Johansen an email telling him

that if he continued to complain about the investigation, either at the Village Hall or over the phone, Ferguson would have him arrested. (*Id.* ¶ 33.)

## III. Alleged Conspiracy

Plaintiffs allege that Burnidge, "a business leader in Hampshire," conspired with Cincinnati, Ferguson, and Officers Haydysch[3] and Neblock "to frame Johansen for the alleged theft of the trade fixtures." (*Id.* ¶ 34.) According to plaintiffs, Cincinnati told Burnidge that he should file criminal charges against Johansen "so that the loss claim on behalf of C & L Farms would be accepted." (*Id.* ¶ 36.) In response, Burnidge filed criminal charges with the Police Department.[4] (*Id.* ¶ 37.)

Officers Haydysch and Neblock conducted a one-sided investigation into Burnidge's complaint. They did not interview witnesses who would have offered "exculpatory" evidence and failed to contact Hytel's law firm or Burnidge's attorney. (*Id.* ¶¶ 39–40.) Haydysch coerced one Hytel employee into saying that Johansen personally ordered her to commit a theft. (*Id.* ¶ 38.) Although Haydysch and Neblock obtained copies of the lease agreement, which states that the trade fixtures belong to the tenant, they proceeded with the investigation. (*Id.* ¶ 41.) Cincinnati also had a copy of the lease agreement and still advised Burnidge to proceed with his theft claim. (*Id.* ¶¶ 43–44.)

On January 4, 2012, Haydysch "lied to a tribunal," claiming that Hytel's trade fixtures were evidence of theft in order to obtain a search warrant of Hytel's Elgin location. (*Id.* ¶ 47.) Haydysch and Ferguson executed the search warrant the next day. They pulled trade fixtures off

---

[3] Haydysch is also spelled "Hadysch" and "Hadysh" in plaintiffs' amended complaint. (*See* Am. Compl.) The court will use "Haydysch" as that is the spelling used in the caption.

[4] Plaintiffs also claim that Haydysch "started executing the conspiracy" by "claiming that Burnidge had filed a theft report." (*Id.* ¶ 35.) Why Hadysch made this claim before Burnidge filed his report is unclear.

the walls and floor and confiscated them, which left Hytel unable to operate. (*Id.* ¶¶ 49–50.)

Haydysch and Ferguson then arrested Johansen and Haydysch signed a complaint of felony theft.

(*Id.* ¶ 51.) Johansen spent (an unspecified) time in jail as a result. (*Id.* ¶¶ 76, 79.)

On February 24, 2012, Haydysch testified before a grand jury that one of Hytel's

employees (the same one he allegedly coerced) told him that property in Hytel's possession

belonged to Burnidge. (*Id.* ¶ 53.) Almost two years later, the state decided not to prosecute the

case. (*Id.* ¶ 54.) Once the case was dropped, neither Burnidge, C & L Farms, nor Cincinnati

claimed any interest in the trade fixtures they had previously alleged Johansen stole. (*Id.* ¶ 55.)

## ANALYSIS[5]

### I.  **Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges a

complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).

In ruling on a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts in the

plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor.

*Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the

complaint must not only provide the defendant with fair notice of a claim's basis but must also

establish that the requested relief is plausible on its face. *See Ashcroft* v. *Iqbal*, 556 U.S. 662,

---

[5] This is the second round of motions to dismiss. In the first round, Haydysch, Neblock, Ferguson, and the Village of Hampshire, as well as Burnidge and C & L Farms, moved to dismiss plaintiffs' claim for intentional infliction of emotional distress as time barred. (Dkts. 16, 19.) The court granted both motions. (Dkt. 27.) In the second round, Cincinnati has moved to dismiss plaintiffs' conspiracy claim and Burnidge and C & L Farms have moved to dismiss plaintiffs' due process and conspiracy claims. (Dkts. 24, 28.) After both motions were fully briefed, plaintiffs filed an amended complaint adding three claims—for retaliation in violation of the First Amendment, for a second violation of due process, and for conspiracy under Illinois law—without making substantive changes to the original claims. (Am. Compl.) Haydysch, Neblock, Ferguson, and the Village of Hampshire filed a motion to dismiss the second due process claim. (Dkt. 51.) Because plaintiffs' amended complaint makes only superficial changes to plaintiffs' original conspiracy and due process claims under § 1983, the parties' arguments concerning those claims are still applicable.

678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atl.* v. *Twombly*, 550 U.S. 544, 555,

127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The allegations in the complaint must be "enough to

raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. At the same time,

the plaintiff need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th

Cir. 2010). "Federal pleading rules call for 'a short and plain statement of the claim showing the

pleader is entitled to relief' . . . . [T]hey do not countenance dismissal of a complaint for

imperfect statement of the legal theory supporting the claim asserted." *Johnson* v. *City of*

*Shelby*, --- U.S. ---, 135 S. Ct. 346, 2014 WL 5798626, at *1 (Nov. 10, 2014) (per curiam)

(citation omitted).

## II.     Due Process

Plaintiffs' amended complaint alleges two violations of due process under § 1983, one

based on fabrication of evidence and one based on coercion of a witness.[6] (Am. Compl. ¶¶ 63–

69.) Because the parties briefed these claims separately, the court will consider them separately.

### A.     Due Process Based on Fabrication of Material Evidence

Relying on cases stemming from *Albright* v. *Oliver*, 510 U.S. 266, 114 S. Ct. 807,

127 L. Ed. 2d 114 (1994), Burnidge and C & L Farms argue that plaintiffs' first due process

claim must be dismissed because state laws provide an adequate remedy for the complained-of

conduct.[7] (Dkt. 29 at 3–4.) In *Albright*, a plurality of the Supreme Court declined to recognize a

substantive due process claim, a "liberty interest," to be free from prosecution except on

probable cause. 510 U.S. at 268–69. Because the plaintiff, who alleged detectives had testified

---

[6] Only Johansen (and not Hytel) alleges deprivations of due process.

[7] Cincinnati also attacks the viability of plaintiffs' first due process claim, apparently out of concern that it could support plaintiffs' conspiracy claim under § 1983. (Dkt. 25 at 11.) As discussed below, however, it cannot. Thus, the court does not consider Cincinnati's arguments.

against him on a charge unsupported by probable cause, had not claimed unlawful seizure without probable cause under the Fourth Amendment, the plurality concluded that his case failed. *Id.* at 275. The concurring opinion of Justices Kennedy and Thomas sets forth the governing law.[8] It is grounded in the line of cases stemming from *Parratt* v. *Taylor*, 451 U.S. 527, 535–44, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981) *overruled on other grounds by Daniels* v. *Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986), which held that procedural due process was satisfied where state remedies were adequate to compensate an individual for a random property loss caused by a state official. *See Albright*, 510 U.S. at 284 (Kennedy, J., concurring). Because the plaintiff could have filed a timely malicious prosecution claim under state law, Justice Kennedy and Justice Thomas concluded that his claim failed. *Id.* at 285–86; *see also Newsome* v. *McCabe*, 256 F.3d 747, 750 (7th Cir. 2001) (stating that "the existence of a tort claim under state law knocks out any constitutional theory of malicious prosecution"); *see also McCann* v. *Mangialardi*, 337 F.3d 782, 786 (7th Cir. 2003) (concluding that plaintiff's due process claim that defendant wrongly prosecuted him was "in essence, one for malicious prosecution" that was foreclosed by Illinois's common law tort action for malicious prosecution).[9] The question, then, is whether Johansen's first due process claim is based on malicious prosecution (and thus he is limited to claiming a common law tort) or whether it is

---

[8] In interpreting *Albright*, the Seventh Circuit determined that the Kennedy-Thomas concurring opinion represented the narrowest ground for the decision and thus set forth the governing law. *Newsome* v. *McCabe*, 256 F.3d 747, 751 (7th Cir. 2001) (citing *Marks* v. *United States*, 430 U.S. 188, 193, 97 S. Ct. 990, 51 L. Ed. 2d 260 (1977)).

[9] The limitation of constitutional claims where there is a state-law analog for relief, however, applies only in the due process arena. *McCullah* v. *Gadert*, 344 F.3d 655, 660 (7th Cir. 2003) ("[T]he core of *Parratt*'s holding is that a post-deprivation hearing (in a court) is sometimes all the process that is 'due'; in contrast, no amount of process can support an arrest without probable cause. *Parratt* has nothing to say about a Fourth Amendment claim.").

grounded in a different due process theory that does not have a state-law analog that provides an adequate remedy. *See, e.g.*, *Newsome*, 256 F.3d at 752 (expressly leaving undisturbed claims brought directly under the due process clause that alleged various kinds of trial-based government misconduct, such as the exculpatory evidence rule set forth in *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963)); *see also McCullah* v. *Gadert*, 344 F.3d 655, 660–61 (7th Cir. 2003) (noting that the plaintiff may have a claim based on a police officer's report containing fabricated information as the report "led directly to [the plaintiff's] detention at the conclusion of his initial court appearance, which was the initial termination of his freedom of movement").

Plaintiffs argue that defendants' fabrication of evidence constituted a *Brady* violation (because defendants failed to turn over falsified evidence) and a deprivation of Johansen's right to liberty (as Johansen was falsely arrested, "required to spend time in jail," and obligated to answer the state's charges). (Dkt. 34 at 4, 6.) There can be no *Brady* violation here as a *Brady* claim requires proof of a reasonable probability that the suppressed evidence would have produced a different verdict, *see Strickler* v. *Greene*, 527 U.S. 263, 281, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999), or, potentially, that the disclosure of the suppressed evidence would have altered the decision to go to trial. *See Alexander* v. *McKinney*, 692 F.3d 553, 556 (7th Cir. 2012) ("[W]e have entertained the possibility that prejudice could be established if an acquitted defendant showed that disclosure of the suppressed evidence would have altered the decision to go to trial.") (citations omitted).

Fabrication of evidence can violate due process if it is later used to deprive the defendant of liberty. *See Fields* v. *Wharrie*, 740 F.3d 1107, 1111–12 (7th Cir. 2014); *Whitlock* v. *Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012) ("We have consistently held that a police

officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of her liberty in some way."); *Dominguez* v. *Hendley*, 545 F.3d 585, 589 (7th Cir. 2008) ("There was and is no disputing that [fabricating evidence] violates clearly established constitutional rights."). Being jailed after an arrest without probable cause is a deprivation of liberty, but it is a claim arising under the Fourth Amendment. In *Alexander*, the plaintiff's allegations that law enforcement officers fabricated evidence and altered digital records to omit exonerating evidence did not state a substantive due process claim where the plaintiff was found not guilty at trial. 692 F.3d at 554–55, 558. Rather, his claim was one for false arrest under the Fourth Amendment or for malicious prosecution under state law. *See id.* at 558. ("Alexander cannot recast his untimely Fourth Amendment claim . . . by combining it with a state law malicious prosecution claim and simply changing the label of the claim to substantive due process."). Johansen's substantive due process claim must be dismissed. Any Fourth Amendment claim he might have had is barred because it accrued when he was arrested, *see, e.g.*, *Wallace* v. *City of Chicago*, 440 F.3d 421, 425 (7th Cir. 2006), and the case was filed more than two years later.

### B. Due Process Based on Coercion of a Witness

Plaintiffs' amended complaint alleges a second due process violation based on Haydysch's alleged coercion of a witness. (Am. Compl. ¶¶ 67–69.) Haydysch, Neblock, Ferguson, and the Village of Hampshire argue that plaintiffs cannot claim a due process violation on behalf of a third party—the witness who was allegedly coerced. (Dkt. 52 at 2–3.)

There is an important distinction between coercion and fabrication. "Coercively interrogating witnesses, paying witnesses for testimony, and witness-shopping may be deplorable, and these tactics may contribute to wrongful convictions, but they do not necessarily

add up to a constitutional violation even when their fruits are introduced at trial" as "[e]vidence collected with these kinds of suspect techniques, unlike falsified evidence and perjured testimony, may turn out to be true." *Whitlock*, 682 F.3d at 584. Thus, although coercion that leads to the fabrication of evidence may be actionable, coercion alone is not. *Fields*, 740 F.3d at 1112–13. An exception exists, however, when the claim is brought by the coerced witness. *Buckley* v. *Fitzsimmons*, 20 F.3d 789, 794 (7th Cir. 1994) (concluding that because "[o]verbearing tactics violate the right of the person being interrogated to be free from coercion," the plaintiff could not complain that prosecutors coerced a witness any more than he could collect damages because they failed to read the witness his *Miranda* rights). Thus, the two paths available to plaintiffs to state a due process claim based on the coercion of a witness are foreclosed: alleging that the witness's testimony was not only coerced but false would convert plaintiffs' second due process claim into nothing more than a restatement of plaintiffs' first due process claim (which as discussed above fails) and alleging that the coercion itself was wrong fails as plaintiffs do not have standing. Plaintiffs' second due process claim, therefore, must be dismissed.

## III.    Conspiracy

Defendants Cincinnati, Burnidge, and C & L Farms argue that plaintiffs' conspiracy claim should be dismissed because plaintiffs have failed to allege a constitutional harm that resulted from the conspiracy.[10] (Dkt. 25 at 9, 13; dkt. 29 at 6.) Plaintiffs' amended complaint states only that defendants acted in concert to "violate . . . [plaintiffs'] constitutional rights." (Am. Compl. ¶ 71.) The claim rests on the allegations that Burnidge, in response to Cincinnati's recommendation, reported a false charge of theft to the defendant officers, who pursued a one-

---

[10] Cincinnati makes other arguments against the claim which the court does not reach. (*See* dkt. 25.)

sided investigation, fabricated evidence, and initiated an unfounded prosecution.[11]  This

conspiracy, as explained above, is directed at a false arrest claim under the Fourth Amendment,

which is barred by the statute of limitations.

## CONCLUSION

For these reasons, Cincinnati's motion to dismiss (dkt. 24), Burnidge and C & L Farms'

motion to dismiss (dkt. 28), and Haydysch, Neblock, Ferguson, and the Village of Hampshire's

motion to dismiss (dkt. 51) are granted.  Plaintiffs' retaliation claim in violation of the First

Amendment remains, as do plaintiffs' common law malicious prosecution and conspiracy

claims.

ENTER

Date:   May 1, 2015                    _____

U.S. District Judge

---

[11] The complaint includes allegations of violation of due process and the freedom of speech, but it fails to tie those violations to any agreement among the parties that might support a conspiracy claim. These allegations are therefore disregarded.